CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
9/27/2024
LAURA A. AUSTIN, CLERK
BY: s/C Kemp
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| CHARLES M., ) | |
| ) | |
| Plaintiff, ) | Case No. 4:23-cv-00014 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| MARTIN O'MALLEY, ) | By:   Hon. Thomas T. Cullen |
| Commissioner of Social Security, ) | United States District Judge |
| ) | |
| Defendant. ) | |

Plaintiff Charles M. ("Charles") filed suit in this court seeking review of the Commissioner of Social Security's ("Commissioner") final decision denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434.[1] Charles primarily suffers from spinal and nerve problems, adjustment disorder, and anxiety. On review of his application for DIB, the Commissioner (through an administrative law judge ("ALJ")) decided that, despite his limitations, Charles could still perform a range of light work, with additional modifications. Charles challenges that decision and moves for summary judgment against the Commissioner or, alternatively, for his case to be remanded for further administrative proceedings. After a thorough review of the record, the Court concludes that the ALJ either failed to consider evidence of Charles's nerve paralysis or else failed to explain why that evidence was not persuasive. Because that omission requires

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Under Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. *See also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

remand, the court need not address Charles's remaining arguments.[2] The court will, therefore, remand this matter for proceedings consistent with this Opinion.

## I. STANDARD OF REVIEW

The Social Security Act (the "Act") authorizes this court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. § 405(g); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The court's role, however, is limited; it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted). Instead, the court, in reviewing the merits of the Commissioner's final decision, asks only whether the ALJ applied the correct legal standards and whether "substantial evidence" supports the ALJ's findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000).

In this context, "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted). It is "more than a mere scintilla" of evidence, *id.*, but not "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review considers the entire record, not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled."

---

[2] The court's decision not to address the remaining grounds Charles raises in his appeal of the ALJ's decision does not reflect any judgment on the merits of those challenges. The ALJ should consider the veracity of those challenges on remand as well, and Charles is not barred from reasserting those challenges in future proceedings.

*Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (per curiam) (internal quotation omitted). But "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) has been working; (2) has a severe impairment that satisfies the Act's duration requirement; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to past relevant work (if any) based on his residual functional capacity ("RFC"); and, if not, (5) whether he can perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. PROCEDURAL HISTORY AND RELEVANT EVIDENCE

On October 17, 2017, Charles protectively filed an application for DIB, alleging disability beginning on June 1, 2011. (*See* R. 85, 88 [ECF No. 5-1].) He later amended the alleged disability onset date to October 22, 2014. (*See* R. 610.) His date last insured ("DLI")—the date on which he last met the Act's insurance requirement, which is a predicate

requirement to receiving benefits—was December 31, 2016. (R. 576.) The DLI is the date by which he must establish disability to receive benefits.

Charles alleged disability based on 12 medical conditions, including a number of nervous-system issues. (R. 162.) The Commissioner denied Charles's application initially and upon reconsideration. (R. 78–84, 87–103.) Charles appealed his denial and, along with his counsel, appeared before an ALJ on July 1, 2019. (R. 28–69.) That ALJ issued an unfavorable decision on Charles's claim (R. 10–27), and Charles filed suit in this court seeking review. (R. 649–51.) *See Charles M. v. Comm'r of Soc. Sec.*, Case No. 4:20-cv-00045 (W.D. Va. July 27, 2020). On the Commissioner's motion, then-Chief Judge Urbanski remanded the case for further administrative proceedings. (R. 652–55.)

Following remand, Charles had another hearing, this time before a different ALJ, on June 23, 2022. (R. 604–24.) The ALJ issued a written decision two weeks later, concluding that Charles suffered from several severe impairments but retained the RFC to perform light work with certain limitations. (R. 582.) The ALJ further found that Charles could not perform any past relevant work, but that he could perform jobs that exist in significant numbers in the national economy, such as office helper, mail clerk, or night cleaner. (R. 594–95.) Accordingly, the ALJ determined that Charles was not disabled within the meaning of the Act. (R. 596.) The Appeals Council denied Charles's request to review that decision (R. 565), and Charles filed suit in this court on May 22, 2023. (Compl. [ECF No. 1].)

**A.     Legal Framework**

A claimant's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting" for eight hours a day, five days a week despite his medical

impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (emphasis omitted). The ALJ determines the claimant's RFC between steps three and four of the five-step disability determination. *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (citing 20 C.F.R. § 404.1520(e)). "This RFC assessment is a holistic and fact-specific evaluation; the ALJ cannot conduct it properly without reaching detailed conclusions at step 2 concerning the type and [functional] severity of the claimant's impairments." *Id.*

The Commissioner "has specified the manner in which an ALJ should assess a claimant's RFC." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). First, because RFC is "a function-by-function assessment based upon all of the relevant evidence of [the claimant's] ability to do work related activities," SSR 96-8p, 1996 WL 374184, at *3, the ALJ must identify each impairment-related functional restriction that is supported by the record, *see Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016). The RFC should reflect credibly established "restrictions caused by medical impairments and their related symptoms"—including those that the ALJ found "non-severe"—that impact the claimant's "capacity to do work-related physical and mental activities" on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1, *2.

Second, the RFC assessment must include a "narrative discussion describing" how specific medical facts and non-medical evidence "support[] each conclusion," SSR 96-8p, 1996 WL 374184, at *7, and must logically explain how the ALJ weighed any inconsistent or contradictory evidence in arriving at those conclusions, *Thomas*, 916 F.3d at 311–12. Generally, a reviewing court will affirm the ALJ's RFC findings when he or she considered all the relevant

evidence under the correct legal standards, and the written decision built an "accurate and logical bridge from the evidence to his [or her] conclusion[s]." *See Brown v. Comm'r of Soc. Sec. Admin.*, 873 F.3d 251, 268–72 (4th Cir. 2017) (cleaned up); *Shinaberry v. Saul*, 952 F.3d 113, 123–24 (4th Cir. 2020); *Thomas*, 916 F.3d at 311–12; *Patterson*, 846 F.3d at 662–63.

**B.     Relevant Testimony and Medical Evidence**

The court limits its recitation of the medical record to evidence about Charles's nerve impairments and nerve paralysis, which is the basis for the court's remand.

At the first evidentiary hearing in July 2019, Charles testified that he could not drive a vehicle for any length of time because doing so caused him to lose feeling in his legs, arms, and hands. (R. 49.) He also testified that neuropathy and his herniated discs created paralysis on his right side. (*Id.*) At the evidentiary hearing in June 2022, Charles testified that, when he drives or sits in a chair, he loses feeling in his right leg, his hands, and his fingers. (R. 614.) These symptoms of numbness, tingling, and loss of feeling in his extremities prevented him from securing employment from 2011 until 2016, his DLI. (R. 42, 49.)

Because Charles is a Veteran, the record includes evidence of the Veteran's Benefits Administration's ratings[3] of his service-connected disabilities for which he receives VA benefits. (*See* R. 371–72, 442–43, 453.) These disabilities include "paralysis of upper radicular nerve group" and "paralysis of anterior crural nerve." (R. 442.) The VA assigned ratings to these disabilities on October 20, 2017. (R. 371–72.)

---

[3] To determine the amount of benefits to which a veteran is entitled, the VA rates the severity of each disability based on criteria set forth in the C.F.R. *See* 38 C.F.R. § 4.29 *et seq*. The ratings for each disability are then combined to determine the veteran's total disability rating. *See* 38 C.F.R. § 4.25. The total disability rating corresponds to particular benefits compensation rates set by the VA.

In addition, secondary to Charles's diagnosed degenerative disc disease—a severe impairment for which the court does not recite the supporting medical evidence because it is not at issue in this appeal—Charles experiences numbness and tingling in his arms, legs, and hands. (R. 392–93.) This loss of feeling in his extremities dates back to at least November 2010. (*Id.*)

## C. The ALJ's Opinion

In the operative decision, the ALJ concluded that Charles suffered from degenerative disc disease, trigeminal neuralgia, adjustment disorder, and anxiety, all of which qualified as severe impairments. (R. 578.)[4] She found that Charles did not suffer from "an impairment or combination of impairments" that met or equaled one of the listed impairments in the applicable regulations. (R. 579.) "After careful consideration of the entire record," the ALJ found that Charles had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except occasional stooping, kneeling, crouching, crawling, and climbing; occasional exposure to vibrations; occasional exposure to hazardous conditions, including unprotected heights and moving machinery; simple, routine tasks; and occasional interaction with the public, coworkers, and supervisors.

(R. 582.) As a result, the ALJ found that a significant number of jobs exist in the national economy that Charles can perform, and that Charles was not under a disability from the alleged disability onset date—October 22, 2014—through the DLI. (R. 594–96.)

---

[4] The ALJ also determined that Charles had medically determinable gastroesophageal reflux disease and emphysema, but that these were not severe enough to render him disabled. (R. 578–79.) Charles does not challenge that determination in this appeal.

With respect to Charles's nerve impairments and potential paralysis in particular, the ALJ noted, in her discussion of Charles's degenerative disc disease, that Charles experienced right leg numbness, and that at one doctor's visit he reported "some bilateral arm loss of sensation, . . . leg numbness, arm weakness with dropping objects, and fingertip tingling." (R. 583, 586.) Regarding the VA disability ratings for "paralysis of upper radicular nerve group" and "paralysis of anterior crural nerve," the ALJ stated that the VA ratings are "neither valuable nor persuasive" evidence. (R. 593.) She explained that the ratings "do not provide any vocationally specific work restrictions," that she was "not bound by them," and that "they are assessed under a different government program with different criteria for their definition of disability." (*Id.*)

### III. ANALYSIS

One of Charles's arguments for remand is that the ALJ failed to address Charles's nerve paralysis, which the VA rated as a service-connected disability. (Mem. Supp. Mot. Summ. J. at 14 [ECF No. 11].) Charles concedes that the ALJ was not bound by the VA's rating, but he contends that the VA's ratings—and the medical evidence underlying them—are evidence that he "has at least *some* degree of paralysis in the femoral nerve and upper radicular nerve group." (*Id.*) And because the ALJ has a duty to consider all relevant evidence and address each medically determinable impairment of which the ALJ is aware, the ALJ's failure to address Charles's nerve paralysis was error. *See* 20 C.F.R. § 404.1545(a)(2)–(3); SSR 96-8p, 1996 WL 374184, at *1, *2.

In response, the Commissioner asserts that the ALJ *did* address Charles's nerve impairments; she just didn't use the term "paralysis" to describe them. (Mem. Opp'n at 9 [ECF

No. 15].) Specifically, the Commissioner points to the ALJ's discussion of the numbness, tingling, and loss of feeling in his extremities that Charles experienced secondary to his degenerative disc disease. (*Id.*) The Commissioner argues that either the nerve symptoms the ALJ discussed are the same as the paralysis underlying Charles's VA rating, or there is no "diagnosis or evidence from an acceptable medical source" to establish paralysis. (*Id.* at 10.)

When determining the claimant's RFC, the ALJ must comply with 20 C.F.R. § 404.1545, which requires that the RFC assessment "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware." 20 C.F.R.§ 404.1545(a)(2). Implicit in that obligation is the preliminary requirement that the ALJ accurately identify and address each of the claimant's impairments. In so doing, "ALJs have a duty to analyze all of the relevant evidence and to provide a sufficient explanation for their rationale in crediting certain evidence." *Bill Branch Coal Corp. v. Sparks*, 213 F.3d 186, 190 (4th Cir. 2000) (internal quotations omitted).

If the Commissioner is correct that the ALJ's discussion of nerve symptoms secondary to Charles's degenerative disc disease referred to the same symptoms underlying the VA's paralysis ratings, that fact is not apparent to the court from the ALJ's opinion. In fact, the VA ratings are discussed several pages after the discussion of symptoms relating to degenerative disc disease. The court will not speculate as to whether the nerve symptoms secondary to degenerative disc disease and VA-recognized paralysis are one and the same. Rather, the ALJ, in her opinion, must "provide a sufficient explanation," *id.*, to "build an accurate and logical bridge" to that effect, *Brown*, 873 F.3d at 269.

If, on the other hand, the ALJ does not consider that evidence to refer to the same symptoms, she must address that nerve paralysis in her opinion. While it is true that the ALJ is not bound by the VA ratings and that she need not follow the VA's conclusion, the medical facts underlying the VA's conclusion are still relevant evidence that the ALJ must consider. *See Bill Branch Coal Corp.*, 213 F.3d at 190. To the extent that she does not find that evidence persuasive, she must "provide a sufficient explanation" as to why. *Id.*

Of course, the ALJ need not address every piece of evidence in the record, *see Reid v. Comm'r*, 769 F.3d 861, 865 (4th Cir. 2014), but the ALJ is required to address each *impairment*. And while the ALJ was correct that she was not bound by the VA rating, and thus that the VA rating itself does not establish a medically determinable impairment, the VA likewise has a rigorous review process during which VA benefits claimants must provide medical evidence of their disabilities prior to receiving a rating. *See* 38 C.F.R. §§ 3.155, 3.159. Consequently, the VA rating does not exist in a vacuum. The VA rating must itself have been based on medical evidence; as such, it is deserving of more deliberate consideration by the ALJ. When considering each of Charles's impairments—as the ALJ is required to do, *see* 20 C.F.R.§ 404.1545(a)(2)—the ALJ should have addressed Charles's nerve paralysis. At the very least, the ALJ should have explained why the evidence underlying the VA's rating,[5] combined with Charles's testimony that he was unable to secure employment between 2011 and 2016 due to paralysis symptoms, does not establish a "medically determinable impairment" or, when

---

[5] Charles testified about his nerve paralysis and its disabling effects at his hearing before the ALJ. (*See, e.g.*, R. 49, 614.) And to the extent that Charles's argument relies on the fact of the VA rating and not the medical evidence underlying it, the commission is "responsible for developing [the claimant's] complete medical history . . . and making every reasonable effort to help [the claimant] get medical reports from [their] own medical sources." 20 C.F.R. § 404.1545(a)(3).

considered in combination with his other symptoms, nevertheless results in a finding of "not disabled" under the applicable regulations. *Id.* Simply asserting that she is not bound by the VA's rating does not satisfy the ALJ's duty to build an "accurate and logical bridge from the evidence to his [or her] conclusion[s]." *See Brown*, 873 F.3d at 268–72.

## IV. CONCLUSION

For the foregoing reasons, the ALJ failed to comply with important regulations in explaining her decision. Those failures frustrate the court's review and, accordingly, this case must be reversed and remanded to the Commissioner for further proceedings consistent with this opinion. *See* 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 27th day of September, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE